# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MADISON POLYMERIC ENGINEERING, INC. | : | CIVIL ACTION NO. |
| WALTER L. MAGUIRE, JR., | : | |
| Plaintiffs | : | 3:00cv02290(RNC) |
| | : | |
| V. | : | |
| | : | |
| WAYNE CASTLEBERRY and | : | |
| HORTICULTURAL TECHNOLOGIES, LLC, | : | |
| Defendants. | : | JUNE 30, 2004 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO ENFORCE SETTLEMENT AGREEMENT

    *i.*    *Background*

        The chronology of events leading from the settlement conference conducted by the

Honorable Joseph J. Lynch, PJO on August 23, 2002, at which a settlement of the litigation was

achieved, to the papers filed by the plaintiffs in opposition to the defendants' motion to dismiss

on March 12, 2003 demonstrates the inexcusable refusal to honor the terms of the settlement

agreement to which they had agreed.  The parties attended a settlement conference on August 23,

2002.  After negotiations, the parties reached an agreement on all issues in dispute.  PJO Lynch

requested the parties immediately reduce their agreement to writing in the form of a Joint

Settlement Memorandum.  On or about September 19, 2002, the plaintiffs' counsel forwarded to

the defendants' counsel the Joint Settlement Memorandum, which he had signed on behalf of his

clients.  By letter dated September 25, 2002, the defendants' attorney returned two fully executed

Settlement Conference Memorandum and requested that the plaintiffs' attorney "file one original with the Court."[1] (Exhibit 1).  ¶ 9 of the Joint Settlement Memorandum stated that the Formal Settlement Agreement was contemplated to be executed within 60 days.  Under the terms of the Settlement Memorandum, the plaintiffs were required to pay the defendants the sum of $17,500.00 in consideration for the defendants assigning all rights to the "Floral Container Carrier" to the plaintiffs.  The $17,500.00 was to be paid in two installments; $10,000.00 on the signing of the Settlement Agreement and the sum of $7,500.00 on April 1, 2003.  Except for the signing of the Joint Settlement Memorandum, the plaintiffs completely ignored their obligations to finalize the settlement and to satisfy the specific obligations to which they had agreed.

Not only did the plaintiffs disregard the terms of the settlement, their counsel became completely non-communicative when inquiry was directed his way for an explanation of the plaintiffs' dilatory behavior.  The chronology of events leading up to the plaintiffs' sabotaging the settlement agreement proves their duplicity.  On October 16, 2002, the defendants' attorney forwarded to the plaintiffs' attorney a draft formal settlement agreement and release of claims for his review.  On October 23, 2002, the defendants' attorney made inquiry of the plaintiffs' attorney of the status of the proposed formal settlement agreement and release of claims.  On October 29, 2002, plaintiffs' counsel wrote the defendants' counsel; "I'm running out to Fed'l Court.  Closing arguments this morning for trial.  I should be back in the office this afternoon

---

[1] The docket record for this case indicates that the Joint Settlement Memorandum had never been filed by the plaintiffs' counsel.

and we can get it done.  Ask for Debbie, my secretary if you need me."  On November 6, 2002, the defendants' attorney again inquired of the plaintiffs' counsel as to the status of the formal settlement agreement and release of claims in the following terms; "*Where is the agreement?*"  On November 14, 2002, plaintiffs' counsel responded to the defendants' counsel's inquiry, as follows; "A draft will be e-mailed to you today."  On November 18, 2002, defendants' counsel wrote the plaintiffs' counsel, "*I need to move on the agreement.  Please forward to me something by the end of the day.*"  On November 25, 2002, plaintiffs' counsel by facsimile transmission forwarded to the defendants' counsel a proposed settlement agreement.[2]  On November 26, 2002, defendants' counsel requested immediate delivery of final settlement agreement.  After the defendants' motion for dismissal was filed with the Court, the plaintiffs' counsel and defendants' counsel had further discussions regarding security for the plaintiffs' payment obligation to the defendants in the amount of $7500.00.  On January 10, 2003, the plaintiffs' counsel informed the defendants' counsel by email that the plaintiffs had agreed to secure the payment obligation, and went on to inform the defendants' counsel that the plaintiff had executed the settlement agreement.  "As previously stated, we are holding and have been for some time the executed

---

[2] The draft settlement agreement was only forwarded to defendants' counsel after he had made a plea to PJO Lynch for assistance.  In a letter dated November 12, 2002, defendants' counsel wrote to PJO Lynch, "I am compelled to bring to your attention the fact that the final settlement agreement regarding the above entitled matter has not been executed.  My client, Wayne Castleberry, is ready, able and willing to finalize the agreement.  We need your assistance with the plaintiff and plaintiff's counsel, Simon I. Allentuch, who was sent a draft of the settlement agreement on October 16, 2002.  I have not been able to have opposing counsel return my calls or email communications."

final settlement agreement and the check for 10K.  *I will be filing a motion to enforce the settlement next week if don't put this to bed in the next couple of days."*  (Emphasis Supplied). On January 14, 2003, the defendants' counsel responded by email with the following message, "[w]e are ready, able and willing to go forward.  Do you want to forward to me the executed agreement and I will obtain the signature of my clients?  Also please forward the universal release you want my clients to sign; and have your clients sign a release of my clients.  What do you need from my client?  On January 17, 2003, the defendants' counsel informed the plaintiffs' counsel by email that the defendants had executed the original assignments, and inquired "[w]hat is your pleasure?  On January 23, 2003, not hearing from the plaintiffs' counsel, the defendants' counsel sent an email message to plaintiffs' counsel informing him that "[w]e need to conclude this matter.  Please let me know when we can exchange documents."  Thereafter, defendants' counsel left in the minimum two telephone messages with the plaintiffs' counsel in an effort to determine why the plaintiffs were not carrying out the terms of the parties' agreement. Plaintiffs' counsel never responded to the defendants' email and telephone messages right through the present date.

The plaintiffs have avoided explaining their remiss behavior; they have merely asserted a baseless claim that they discovered sometime "in or about the end of January, 2003" that they had in some way been misled or deceived by the defendants.  But this does not answer for their failure to finalize an agreement prior to that date.  From the surrounding events it is most evident

that the plaintiffs have foisted this claim on the Court as a subterfuge to avoid their obligations under the Joint Settlement Memorandum.  Their conduct throughout the settlement period belies their present assertion.  It is a mere artifice to excuse their failure to honor the terms of the settlement.

   *ii.*      *Discussion*

   The plaintiffs asserted in previous filings with the Court, "HTL had two distinct types of products it was developing and/or marketing to the public: devices which were used to transport flowers and plants (the Transporter 10 products) and a foam growing media for flowers and vegetables (Medius)."  The plaintiffs readily admit that Medius is a product of the foam growing media type as opposed to a transport product.  The Joint Settlement Memorandum clearly evinces the agreement of the parties to settle the litigation on terms whereby the defendants would transfer to the plaintiffs their rights to all transport type devices.  The Joint Settlement Memorandum specifies at ¶ 4, "[t]he defendants will transfer to the plaintiffs all rights which they possessed to Horticultural Technologies, LLC's products, specifically the Transporter 10 and the Floral Container Carrier.  The defendants will certify that other than the Transporter 10 and the Floral Container Carrier there are no other *transportation delivery systems* for floral products which have not been disclosed to the plaintiff's counsel."  (Emphasis added; footnote omitted.)  The products transferred to the plaintiffs were limited to those of the transport type and the defendants' certification extended only to transport type products.  The absence of a

similar certification for foam growing medium type products unequivocally demonstrates that the agreement to transfer *transportation delivery systems* purposely excluded "Medius". Additionally, the failure to list "Medius" as a product that was a subject of the transfer along with the Transporter 10 and the Floral Container Carrier is conclusive evidence that the plaintiffs and the defendants did not envision the settlement agreement as including "Medius" and products of that type.

Contrary to their belated claim, at the time the settlement was reached, the plaintiffs had full and complete knowledge of "Medius". The defendants had not secreted the product from the plaintiffs; the product was mentioned prominently in the defendants' literature of which the plaintiffs had been aware. Throughout the deposition of the defendant, Castleberry, the plaintiffs' counsel questioned Castleberry repeatedly about "Medius". Castleberry stated, without hesitation, that he viewed "Medius" as an important product of HTL, but that its development had to be placed on hold due to the plaintiffs' failure to perform under the terms of their joint agreement. The defendants did not deny the existence of "Medius" nor did they deny that "Medius" was a product for which HTL once had an interest. When the Joint Settlement Memorandum was signed by the plaintiffs they knew the full extent of the defendants' involvement with "Medius". The settlement agreement did not include "Medius" or involve it in any manner, explicitly or by inference. There is simply no justification for the position put forth by the defendants; that the settlement agreement included "Medius". The plaintiffs fully

understood that the settlement agreement did not apply to "media" type products.  No other

conclusion could be reached in light of the express language of the settlement agreement.

Bolstering the defendants' position is the explicit terms of the non-compete clause, ¶ 2 of

the Settlement Agreement.  The defendants' agreement not to compete with the plaintiffs is

restricted to "transportation delivery systems".  It states, "[t]he defendants agree that for a period

of fifteen months from the date of transfer described in paragraphs 4 and 5 herein is fully

completed, they will not sell or market *transportation delivery systems of floral products…*"

(Emphasis added.)  The defendants' activities involving "foam growing media" are entirely

proper.  The parties' settlement did not preclude the activity in any manner.

Contrary to the plaintiffs' claims in their prior filings, the defendant, Castleberry, testified

truthfully and completely throughout his deposition.  Also, Castleberry responded fully to the

plaintiffs' discovery requests.  The deposition transcript of Castleberry's testimony submitted

with the plaintiffs' opposition papers shows that he did not conceal or mislead the plaintiffs

regarding the existence of "Medius" or its development.  Very simply, the defendant,

Castleberry, did not testify falsely under oath at his deposition.  When quizzed about "Medius",

the plaintiff related how "Medius" was developed by General Foam Corporation.  The defendant,

Horticultural Products, LLC, entered into an exclusive distribution agreement with General

Foam to distribute "Medius".  Castleberry accurately testified that Horticultural Products, LLC

did not own "Medius".  It simply had the exclusive right to sell "Medius".  When General Foam

was purchased by Foamex, Foamex did not honor the distribution agreement that General Foam had entered into with Horticultural Products, LLC.  That ended Horticultural Products, LLC's relationship with "Medius".  Castleberry fully explained the relationship, its very genesis and its termination, at his deposition.

The plaintiffs' behavior since August 23, 2002 reveals that the plaintiffs, shortly after reaching an agreement to settle this matter, decided that they would not honor the terms of the settlement.  Without legal justification, the plaintiffs have disregarded the terms of the agreement and at this late date, they have engineered a spurious fraud claim to validate their misconduct.

"In order to reach a valid settlement agreement, the parties must voluntarily enter into the agreement and the parties must mutually assent to the terms and conditions of the agreement. *Millgard Corp. v. White Oak Corp*., 224 F. Supp. 2d 425, 432 (D. Conn. 2002)(citation omitted); *Brown v. Nationscredit Commercial*, 2000 U.S. Dist. LEXIS 9153, at *6 (D. Conn. June 23, 2000)(citations omitted); see also *Johnson v. Schmitz*, 237 F. Supp. 2d 183, 2002 WL 31863520, at *4-5 (D. Conn. Dec. 19, 2002)(multiple citations omitted).  However, once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if it is an oral agreement and even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing.  *Pultney Arms, LLC v. Shaw Industries, Inc*., 2002 U.S. Dist. LEXIS 17678, 2002 WL 31094971, at *2 (D. Conn. Sept. 6, 2002); *Johnson*, 237 F. Supp. 2d 183, 2002 WL

31863520, at *4; *Brown,* 2000 U.S. Dist. LEXIS 9153, at *5-6.  Moreover, once a settlement is

reached, the "clear and unambiguous terms of the agreement" are not subject to repudiation by

the parties; rather, the agreement will be summarily enforced by the court.  *Brown*, 2000 US

Dist. LEXIS, at *6; *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn.

804, 812, 626 A.2d 729, 733 (1993).  "Summary enforcement is not only essential to the efficient

use of judicial resources, but also preserves the integrity of settlement in a meaningful way to

resolve legal disputes."  *Audubon.* 225 Conn. at 811 As Judge Newman, writing for the majority

of the Second Circuit, noted

> Due regard for the proper use of judicial resources requires that
> a trial judge proceed with entry of a settlement judgment after affording
> the parties an opportunity to be heard as to the precise content and
> wording of the judgment, rather than resume the trial and precipitate an
> additional lawsuit for breach of a settlement agreement.  This authority
> should normally be exercised whenever settlements are announced in the
> midst of trial.  *Janus Films, Inc. v. Miller*, 801 F.2d 578 583 (2d Cir. 1986)."

> *New Horizon Fin. Servs., LLC v. First Fin. Equities, Inc.,* 2003 U.S. Dist. LEXIS 14573,
>
> 14-16 (D. Conn. 2003).

As discussed above, the parties mutually assented to the terms and conditions of the Settlement Agreement. As such it is a contract that is binding and conclusive and the parties are bound to the terms of the contract even if it is an oral agreement and even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing. It is not subject to repudiation by the parties; rather, the agreement will be summarily enforced by the court.

THE DEFENDANTS

BY:_____
Thomas W. Bucci
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT 06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Fed. Bar #ct07805
Email: thomasbucci@earthlink.net

## <u>CERTIFICATION</u>

THIS IS TO CERTIFY that on the 30th day of June, 2004, a copy of the foregoing Memorandum In Support of Motion To Enforce Settlement Agreement has been mailed to the following counsel of record:

Simon I. Allentuch, Esquire
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510-2026
Tel: 203-821-2000
Fax: 203-821-2009
Fed. Bar #ct21094
Email: sia@npmlaw.com

_____
Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.