IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

MADISON POLYMERIC ENGINEERING,
INC., WALTER L. MAGUIRE, JR., in their
individual capacity and derivatively as a
member(s) of Horticultural Technologies,
L.L.C.,

                        Plaintiffs,

      -against-                        Civil Action No.: 3:00CV2290(RNC)

WAYNE CASTLEBERRY and
HORTICULTURAL TECHNOLOGIES,
L.L.C.,

                        Defendants.

-------------------------------------------------------X

**FILED**

2004 AUG -9  A 11: 28

U.S. DISTRICT COURT
HARTFORD, CT.

### REPLY MEMORANDUM OF LAW

The plaintiffs Madison Polymeric Engineering, Inc. ("Madison") and Walter L. Maguire ("Maguire"), by their counsel, Neubert, Pepe & Monteith, P.C., respectfully submit this Memorandum of Law in support of its Motion to Compel Discovery.

### Preliminary Statement

Defendants Wayne Castleberry ("Castleberry") and Horticultural Technologies, LLC ("HTL") cannot change the fact that they have purposely failed to produce responsive documents. Instead, they set for a summary of the facts which has little basis in reality. Notably, this Statement of Facts has no citations to the record. Plaintiffs have therefore provided the Court with a detailed recitation of the relevant facts with citations to the record. The record and the Statement of Facts demonstrates that defendant Castleberry has repeatedly testified falsely and failed to produce documents. The number of instances of demonstrably false testimony,

some of which are described below, mean that it is impossible to tell when he has told the truth pr produced all responsive documents and when he has not. As a result, plaintiffs asked the Court to compel Castleberry to produce documents, which he has not already produced, but which remain in his care, custody or control. As mentioned in their moving papers, thousands of pages of responsive documents were apparently given to Castleberry's business partner in North Carolina and never produced. The Court should not reward this bad behavior and should Order Castleberry to produce all responsive documents.

## Statement of Facts

In or about the winter of 1998, Maguire purchased membership units in HTL from Castleberry's two former partners. ¶10-11, Complaint. The purchase was made pursuant to an agreement signed by both Castleberry and Maguire. In summary, the agreement provided that Maguire and/or Madison would (1) become the majority (66.66%) shareholder in HTL by purchasing the membership units of all members other than Castleberry; (2) become the exclusive manufacturer of HTL products; (3) be compensated for such manufacturing services at the rate of Madison's cost plus 20%; and (4) would provide HTL with a certain amount of working capital. Castleberry remained the chief executive officer of HTL and retained physical control of the Company. ¶9, Complaint.

**Medius Was A Key HTL Product From The Beginning**

Since its inception in, HTL had two distinct types of products it developed and/or marketed to the public: devices which were used to transport flowers and plants (the Transporter 10 products) and Medius, a foam growing media for flowers and vegetables. See Exhibit 1, Allentuch Declaration. Castleberry prepared a "Business Plan/Financial Proposal" dated August, 1998, which he gave to plaintiffs to induce them to purchase the membership interests in HTL of

Castleberry's current partners. Id.

One section of the Business Plan contains a lengthy description of Medius products stating: "Medius is a growing media that will be used in the floral and vegetable industries. Horticultural Technologies, L.L.C. proposes that Medius will capture a significant part of these markets." The Business Plan also contained a section analyzing "Competition" for Medius products and a marketing plan. Finally, the Business Plan also included color pictures from the Medius growth trials conducted at North Carolina State University performed in connection with General Foam Corporation. Maguire was subsequently provided with a copy of the North Carolina State University Report. See Exhibit 2, Allentuch Declaration. The plaintiffs and the defendants even agreed upon a budget which had a line item for costs associated with the Medius product. See Exhibit 3, Allentuch Declaration. At his November 1, 2001 deposition, Maguire testified that: "I wanted to use that particular money for the Medius project. It was the major part of this company's potential." P. 28, Exhibit 13, Allentuch Declaration. Maguire continued: "[i]t was my intention for the company to sell these transporters until it could really develop the Medius product line, which was the large potential of this company." P. 34, Exhibit 13, Allentuch Declaration.

Castleberry was deposed on November 6, 2001. See Exhibit 4, Allentuch Declaration. At his deposition, he testified that HTL was developing Medius and that it was a "potentially bigger moneymaker for the company than" its other products. Pp 140-141, Castleberry Deposition, Exhibit 4, Allentuch Declaration. In response to the question whether "it was [HTL's] intent in December of 1998 to manufacture a Medius product in 1999," Castleberry responded, "[y]es." He also testified that HTL had the rights to Medius. P. 142, Castleberry Deposition, Exhibit 4, Allentuch Declaration. The Medius name was trademarked (serial

3

number 75481245) and HTL owned the trademark. Exhibit 14, Allentuch Declaration.

**Castleberry Secretly Appropriated the Medius Product**

In or about October, 2001, Castleberry's business partners, Mark, Keith and Jon Pavlansky (the "Pavlanskys"), created an entity known as CP Medius LLC ("CP Medius"). See Exhibit 7, Allentuch Declaration. Just before the August, 2002 Settlement Conference, Castleberry transferred the Medius Trademark from HTL to CP Medius. See Exhibit 14, Allentuch Declaration. Castleberry had HTL pay for at least part of the costs associated with transferring and maintaining this trademark for CP Medius. Castleberry secretly caused HTL to pay the Pavlanskys' attorneys, Brock, Scott, & Ingersoll, PLLC, for the formation and other legal expenses associated with CP Medius. Exhibit 15, Allentuch Declaration. Castleberry also caused HTL to pay for the design of CP Medius' new "Medius" logo in January, 2002. Exhibit 16, Allentuch Declaration. Castleberry had HTL pay for CP Medius packaging design and web hosting. These also occurred during the first seven months of 2002. Exhibit 17, Allentuch Declaration. All of these documents were recently recovered from the Pavlanskys after a drawn out discovery battle in North Carolina. In sum, since Castleberry controlled HTL and had frozen Maguire out, he used HTL assets to pay for stealing and transferring the Medius product, and related intellectual property, to CP Medius.

None of the forgoing was disclosed by Castleberry in deposition or in documents to Maguire, during the litigation or outside the litigation. Paragraph 19, Allentuch Declaration.

**Castleberry Testified Falsely and Failed to**
**Produce Documents Which Would Have Exposed His Scheme**

At Castleberry's deposition in November 6, 2001, Castleberry then testified that he had nothing to do with Medius any longer. He testified:

4

> Q. And have you done anything with them since December, 1999?
>
> A. **I have nothing to do with Medius any longer.**

(emphasis added) P. 142, Castleberry Deposition, Exhibit 4, Allentuch Declaration. Castleberry then testified as follows:

> Q. Okay. So you have basically given up on producing Medius products at this point?
>
> A. **Yes I have.**

(emphasis added). P. 144, Castleberry Deposition, Exhibit 4, Allentuch Declaration. Given his activities on behalf of CP Medius in 2001 and 2002, this statement was clearly false. In response to a question whether he had manufactured the Medius product, Castleberry responded "No." He continued: "Because at this point, I was too busy discovering other flaws in the relationship with Madison Polymeric Engineering that was involved with the transporter delivery system that I needed to handle first before getting involved with Medius . . ." P. 141, Exhibit 4, Allentuch Declaration. That statement was clearly false since he was in the process of taking the Medius product and transferring it to CP Medius.

Mark Pavlansky, President of Hibco Plastics, Inc., also testified falsely at his deposition on the same issue. The deposition was held on November 16, 2001, only months after CP Medius, LLC was created. Mark Pavlansky testified:

> Q. Other than your relationship with HTL, do you have any other type of relationship with Wayne Castleberry?
>
> A. **No.**
>
> Q. So the only thing that Hibco Plastics does for Castleberry or HTL is to produce the items in Pavlansky 1 [Transporter 10 products.]
>
> A. **Exactly.**

5

(emphasis added). P. 22, Pavlansky deposition, Exhibit 10, Allentuch Declaration. Mark Pavlansky testified further that:

> Q. Has Castleberry asked you or Hibco to invest in any other venture?
>
> A. **No.**
>
> Q. **Are you familiar with the word medius?**
>
> A. **No.**

P. 26, Pavlansky Deposition, Exhibit 10, Allentuch Declaration. Mark Pavlansky's counsel at the 2001 deposition, Mark Ingersoll, was the same attorney who had just incorporated CP Medius, LLC for the Pavlanskys. See Exhibit 16, Allentuch Declaration. When plaintiffs redeposed Mr. Pavlansky last month, he denied having been asked the question and claimed the transcript was incorrect. He admitted however, that the answer to the question above should have been "yes." P. 147, Exhibit 18, Allentuch Declaration.

In addition, the plaintiffs served the defendants with document demands. Among the demands which clearly would have required Castleberry to produce documents concerning Medius was request 44, which asks for "[a]ll documents concerning Mobius or Medius." See Exhibit 11, Allentuch Declaration. While no objection was interposed, the defendants did not produce any documents concerning CP Medius, LLC or its products. Instead, he testified: "I provided you with everything you requested." P. 195, Exhibit 4, Allentuch Declaration. There is a Motion to Compel Production now pending in this case because it is apparent, with respect to a large number of requests, that Castleberry purposely failed to produce documents.

Similarly, Mark Pavlansky and Hibco, Inc. were subpoenaed to produce documents in November, 2001. See Exhibit 12, Allentuch Declaration. Among other documents, Mark

Pavlansky and Hibco were asked to produce "all documents concerning HTL or Castleberry;" "all contracts or agreements with HTL or Castleberry;" "all correspondence to or from HTL or Castleberry;" and "all e-mails sent to or received from HTL or Castleberry." They failed to produce any documents concerning Medius or CP Medius. Id.

### Discovery of Castleberry's Wrongdoing

During January, 2003, defendants' counsel forwarded an e-mail from his client with a comment concerning an outstanding bill for the HTL website. Castleberry's e-mail bore the return e-mail address wcastle@cpmedius.com and the website www.cpmedius.com. According to the website, CP Medius' primary product is called Medius, the same name HTL used for the foam based growing medium it was developing. See Exhibit 6, Allentuch Declaration. According to the website, "Medius is a homogenous horticultural foam material, which is designed to give the grower a consistent and cohesive growing medium. The Growing Medium is completely sterile, has neutral PH and exhibits uniform hydrology." Id. Medius is similarly described in the 1998 HTL Confidential Business Plan as follows: "Medius is a growing media that will be used in the floral and vegetable industries. Horticultural Technologies, LLC proposes that Medius capture a significant part of these markets. The structure of the foam growing media involves expansion of polyurethane . . . . It is sterile. " See Exhibit 1, Allentuch Declaration. The CP Medius website showcases the same 1999 North Carolina State University report on Medius which is contained in the HTL Confidential Business Plan that Castleberry gave to Maguire. See Exhibits 1 and 6, Allentuch Declaration. The Business Plan states: "physical and chemical characteristic tests were conducted at the

7

Horticultural Substrate Laboratory, at North Carolina State University. Rooting trials were conducted next in the greenhouse and growth tests were conducted next in the greenhouse and growth tests will conclude." See Exhibit 1, Allentuch Declaration. The study used by CP Medius and cited on its website is the same study which was prepared for HTL.

The headquarters for CP Medius is located at the address for Hibco Plastics in North Carolina. See Exhibit 6, Allentuch Declaration. When Castleberry froze plaintiffs out of HTL, Hibco produced all of HTL's products. Castleberry is listed as the contact person for Customer Service & Sales in the United States. Jon Pavlansky is also listed as a CP Medius executive on its website. According to Hibco Plastic's website, Mark, Keith, and Jon Pavlansky, manage Hibco. Id.

**The Preliminary Agreement**

In August, 2002, the parties met with Special Master Lynch and entered into an agreement to agree (the "Preliminary Agreement") (Exhibit 5, Allentuch Declaration) which set forth the general terms of the settlement. Pursuant to the Preliminary Agreement, Castleberry was required to transfer all of the rights to the intellectual property of HTL to Maguire/Madison in exchange for the settlement of all of the plaintiffs' claims against them. The Preliminary Agreement also provides that the parties would enter into a formal settlement agreement (the "Formal Settlement Agreement").

**Subsequent Settlement Discussions and Discovery**

In or about June, 2004, the parties met with Magistrate Margolis for a settlement conference. The parties reached a new settlement in principle. The tentative settlement is contingent, in part, on Castleberry's ability to raise funds to pay plaintiffs.

8

Since that time, defendant, at great expense and difficulty, attempted to CP Medius, LLC and Hibco Plastics Inc. CP Medius and Hibco failed to comply with a duly served subpoena. After an extended discovery battle, Mark Pavlansky appeared for Hibco and subsequently produced documents. These documents, some of which were discussed above, demonstrate that Castleberry used thousands and thousands of dollars of HTL funds to pay for his personal lifestyle, including purchases at Circuit City, trips to Canada for his other business and restaurants near his house to name a few. See Paragraph 19, Allentuch Declaration. As briefly discussed above, Castleberry used HTL money to pay for the creation of CP Medius and the transfer of intellectual property from HTL to CP Medius.

**Castleberry Spent Huge Sums of HTL Money on Himself and Concealed It**

In the documents plaintiffs obtained last month in North Carolina from Castleberry's business partner, the Pavlanskys, documents demonstrate that Castleberry paid for many of his personal expenses with HTL's funds. See Exhibit 22, Allentuch Declaration. While simply examples, the documents show that Castleberry charged and HTL paid for home electronics, picture frames, multiple restaurants near his home, haircuts, dry cleaning bills, YMCA membership, home improvement supplies, AAA membership, purchases at gift stores, postage for personal shipping, groceries, personal items from Walmart, Barry Mantilow tickets, Consumer Reports subscription, whole life insurance, other life insurance, and liability insurance for CP Medius, LLC dating back to the beginning of 2002. See Exhibit 22, Allentuch Declaration. Castleberry did not reimburse HTL for any of these items.

**Castleberry Continues To Testify Falsely Under Oath**

Castleberry was redeposed on May 26, 2004. While there are many statements he made in his deposition which are false, his testimony with respect to CP Medius is clearly not true. In

9

response to the question "So when did you start working for CP Medius?", Castleberry responded "September 2002 or sometime in 2003." P. 263, Exhibit 19, Allentuch Declaration. He continued that he "asked them could he be hired and they said sure." Id. Presumably, Castleberry selected September, 2002, because it was the month following the settlement conference. Of course, documents which Castleberry maintained in North Carolina which plaintiffs obtained last month with great difficulty, demonstrate that he was involved with CP Medius as early as the end of 2001 and the beginning of 2002. See Exhibits 16 through 18, Allentuch Declaration. Castleberry's wife, is listed as the administrative contact for the cpmedius.com website which was created in October, 2001. See Exhibit 9, Allentuch Declaration.

## Argument

### I.   Castleberry Should Produce All Responsive Documents

The forgoing Statement of Facts demonstrates that Castleberry has repeatedly testified falsely and hidden responsive documents. Defendants present little argument or explanation for their clear and purposeful failure to produce thousands of pages of documents recently received which demonstrate Castleberry's wrongful and illegal actions. Defendants' sole argument consists of the fact that Castleberry has produced some documents and therefore cannot have failed to produced documents responsive to all requests. However, given Castleberry's pattern of testifying falsely and withholding or secreting thousands documents which evidence his liability, plaintiffs have no confidence that Castleberry does not have thousands of additional responsive documents.

The most key requests are the following:

First Production Request (10/1/01) Numbers: 41, 44, 48, 49, 53

Second Production Request (4/16/04) Numbers: 5, 6, 7, 8, 11, 18, 19, 21, 22, 23, 24

Third Production Request (6/8/04) Numbers: 1-5, 7-9, 12.

While it is difficult to ascertain, it appears likely that Castleberry has not produced all responsive documents to these key requests. Plaintiffs therefore request that the Court Order full compliance with all pending requests immediately, and the requests set forth above in particular. In addition, plaintiffs respectfully request that the Court sanction Castleberry for his purposefully failure to comply with discovery.

## Conclusion

For the reasons set forth above, plaintiffs respectfully request that the Court grant plaintiffs' Motion to Compel Discovery.

THE PLAINTIFFS

By: _____
Simon I. Allentuch, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Tel (203) 821-2000
Fed. Bar No. ct21094

## CERTIFCATION OF SERVICE

     I hereby certify that a copy of the foregoing was sent via first class, postage prepaid on August 9, 2004 to:

Thomas Bucci, Esq
Willinger, Willinger & Bucci
855 Main Street
Bridgeport, CT 06604

/Simon I. Allentuch